Johw D. Bennett, J.
Pursuant to a decision of this court dated September 13, 1973 (Matter of Wells, N. Y. L. J., Sept. 19, 1973, p. 21, col. 2), the court directed that a hearing be held to determine whether or not the decedent’s surviving spouse may take as a legatee under the terms of the decedent’s will in *459 spite of the fact that she was convicted of manslaughter in the second degree for recklessly cansing the death of the decedent.
On the date scheduled for the hearing, the decedent’s spouse appeared but her attorneys failed to appear and did not request any adjournment from this court nor submit any affidavits for their failure to appear. The attorney representing the decedent’s son moved to dismiss the surviving spouse’s claim to be the sole beneficiary of the decedent’s estate on the grounds of forfeiture (Wachtell, New York Practice under the CPLR p. 278). No testimony was taken at the time of the scheduled hearing on October 18, 1973, but there were introduced in evidence the minutes and transcripts of the criminal trial together with related documents. The court gave all attorneys ample time to file briefs. Briefs and replies were subsequently filed with the court.
It is the position of the decedent’s surviving son that since the surviving spouse raised the issues of self-defense and accident and could have interposed any defense regarding insanity in the criminal proceeding, she is barred from attempting to interpose such defenses in the within proceedings and accordingly if any hearing is necessary the issues to be litigated in this court would be limited by collateral estoppel.
Since the criminal conviction of the surviving spouse conclusively established that the killing of the decedent was not an accident, committed in self-defense or while she was insane, she is collaterally estopped from raising these defenses in this proceeding (Grand v. City of New York, 32 N Y 2d 300).
The contention of the surviving spouse that the findings in the criminal proceedings give rise to the doctrine of collateral estoppel as to all parties is without foundation (Matter of Eckhardt, 184 Misc. 748). Since the estate and the legatees were not parties to the criminal proceedings, they should not be estopped unless perhaps the surviving spouse had been acquitted on the grounds of insanity where the burden of proving same is more difficult in a criminal proceeding than in a civil proceeding (Matter of Bobula, 19 N Y 2d 818; Matter of Wirth, 59 Misc 2d 300). The surviving spouse further takes the position that if this court has decided that the criminal conviction is not binding on this court and that in this civil proceeding the court may find a greater crime was committed, then such a finding could only be made in a de novo hearing where this court can independently evaluate the testimony and evidence and not merely by reading the minutes of a prior proceeding. That position may possibly be supported, but in this case because of *460 the doctrine of collateral^ estoppel, the issues are narrowed and a hearing is not necessary because of the óourt’s finding hereinafter.
The leading case in the issue of forfeiture is Riggs v. Palmer (115 N. Y. 506), wherein'it is stated that one mayX not take advantage of his own wrong or acquire, property by his own crime. The law is not clear, however, as to exactly what constitutes a wrong so as to create a forfeiture or what crimes constitute a forfeiture (see Matter of Wirth, 59 Misc 2d 300, 302, supra). In several jurisdictions forfeiture is provided for by statute and some States take the position that forfeiture arises when one is convicted or is found to have been guilty of murder or voluntary manslaughter but, that forfeiture' does not arise if the party was convicted or found to have committed, involuntary manslaughter (68 Mich. L. Rev. 65) There/ is no (question that manslaughter in the first degree isjvoluntary manslaughter while criminally negligent homióide is inVoluntary manslaughter. There is an area of manslaughter such’as manslaughter in the second degree where one can question whether it is voluntary or involuntary manslaughter as the statute now defines that crime (see Wharton’s Criminal Law and Procedure, ch. 12).
Surrogate Sobel in Matter of Loud (70 Misc 2d 1026) stated that forfeiture arises when there is proof that a beneficiary intentionally and feloniously took the life of a decedent. He also stated and this court concurred in its decision of September 13,1973 (Matter of Wells, N. Y. L. J., Sept. 19,1973, p. 21, col. 2, supra) that no hearing probably is necessary when a killer has been convicted of intentional homicide to wit: murder or manslaughter in the first degree because both crimes are intentional (see Penal Law, §§ 15.05, 125.20 and 125.25). This is so especially where the defendant voluntarily testifies on his own behalf as here: Surrogate Sobel in his decision stated, however, that in all other cases a hearing must be had to establish forfeiture in order for the court to determine whether or not the wrong committed was intentional and if the crime was a felony.
If a hearing is held to establish whether the wrong was intentional And a felony, the Surrogate’s Court may try the issue de novo (Matter of Eckhardt, 184 Misc. 748, supra). This court agrees that if one were acquitted of any crime or pleaded guilty or were convicted of a crime which did not constitute forfeiture after a hearing, this court could, nevertheless, because of the difference of the burden of proof in civil proceedings, find that the elements of forfeiture exist. In the criminal proceedings the decedent’s surviving spouse took the stand and testified on her own behalf and was found guilty of manslaughter in the *461 second degree. Accordingly since the burden of proof is stricter in the criminal proceedings and since she testified, this court in no event could find her actions to constitute less than manslaughter in the second degree (Grand v. City of New York, 32 N Y 2d 300, supra). The court must now decide whether that is enough to constitute forfeiture or whether a hearing should be held to determine if an “ intentional ” crime was committed.
If it is necessary for one to commit an intentional felony to be barred from sharing in an estate, then a hearing would be necessary. An intentional felony is defined in section 15.05 of the Penal Law. Manslaughter in the second degree is not an intentional felony. The decedent’s surviving spouse was found guilty of manslaughter in the second degree for recklessly causing the death of another person (Penal Law, § 125.15). As defined in section 15.05 of the Penal Law, one acts recklessly when he “ acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviance from the standard of conduct that a reasonable person would observe in the situation ”.
Intentional felonies are either Class A or B felonies and one convicted thereof under a Class A felony could be sentenced to death or a term of life imprisonment and for a Class B felony for a term not to exceed 25 years. For a Class C felony (manslaughter in the second degree) one may receive a sentence of a term not to exceed 15 years. One found guilty of criminally negligent homicide is guilty of a Class E felony and could be sentenced to a term not to exceed four years (Penal Law, § 70). It is evident by the sentences provided for the felonies that a Class C felony is more closely related to a Class A and B felony than a Class E felony. As indicated heretofore many States would hold that forfeiture does not arise if one were found to have committed criminally negligent homicide (68 Mich. L. Rev. 65). In revising the Penal Law, the Legislature saw fit, even though one’s actions were unintended, to impose a standard of conduct on society as a deterrent and thus included criminally negligent homicide as a degree of manslaughter. They also provided that a reckless offender is one who is aware of the proscribed risks and consciously disregards it while the criminally negligent offender is not aware of the risk created and is not consciously disregarding a duty that he has to society to *462 refrain from acting criminally negligent (People v. Haney, 30 N Y 2d 328).
There is a tremendous difference between one who is criminally negligent but nevertheless guilty of unintentional manslaughter from one guilty of manslaughter in the second degree for recklessly causing the death of another because in the one instance the action was not a conscious act whereas the other person is aware of what he is doing and consciously disregards a substantial and unjustifiable risk from which a result will occur (see McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, Practice Commentary to § 125.10 and § 125.15). Accordingly this court holds that the commission of an “ intentional felony ” is not a mandatory element to constitute forfeiture (Matter of Drewes, 206 Misc. 940; Matter of Hawkin, 213 N. Y. S. 2d 188). A wrongdoer may acquire property from his victim if the slayer is insane at the time of the commission of his act, if the killing was accidental or in self-defense, or if the wrongdoer is negligent or guilty of minor manslaughter (Matter of Wirth, 59 Misc 2d 300, supra), but the court finds based on the transcript and the statutes above referred to that the surviving spouse feloniously caused the death of the decedent and was consciously aware of the risks and results that could follow from her actions. This court finds these elements constitute a wrong contemplated in the findings of Riggs v. Palmer (115 N. Y. 506, supra) and therefore the surviving spouse has forfeited her benefits under the decedent’s will.