OPINION OF THE COURT
John D. Bennett, J.
Thomas Busacca was convicted on March 24, 1977 of manslaughter in the first degree for intentionally killing his wife Florence. The conviction was affirmed by the Appellate Division (69 AD2d 1021) and the Court of Appeals denied leave to review (47 NY2d 904). Other than her husband, the decedent *568 is survived by two children, both now adults. By the decree of April, 1978, the surviving spouse was disqualified by his own wrongdoing from sharing in his wife’s estate. At present the court is requested to determine the rights, if any, he has to the proceeds of sale of realty formerly owned by him and the decedent as tenants by the entirety.
A necessary element of a tenancy by the entirety is the intermarriage of the tenants. Because of the unity of the marriage they hold as one person, each being entitled to the equal enjoyment and possession of the property with the other. The right of survivorship exists between them since the estate belongs to the unity and therefore continues in the survivor as the surviving member of the unity. The estate is held by the legal unity absolutely and therefore neither party during its continuance has any individual interest other than the right to a share in the possession and the rents and profits. Divorce terminates the estate since the unity is destroyed and the parties thereafter hold as tenants in common; and of course, the death of one results in the survivor as the sole owner (Walsh, The Law of Property [2d ed], pp 359-361).
The courts in New York have been uniform in the statement of the principle "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime” (Riggs v Palmer, 115 NY 506, 511).
There exists in New York only one case on point with the instant statement of facts (Matter of Hawkins, 213 NYS2d 188). In that case the court recognized that the surviving tenant may not enlarge her interest as a result of the homicide. However, each is vested with a life interest in the land and during the lifetime of the tenants by the entirety each is entitled to one half of the rents and profits so long as the question of survivorship is in abeyance. The court decided that the issue of survivorship was still held in abeyance with respect to the wrongdoer’s interest in one half of the rents and profits; however, as to the fee interest the ultimate ownership had been determined since the wrongdoer is precluded from taking as survivor by her wrongful act. While not being permitted to enrich herself by her crime, she was nevertheless not deprived of her interest in the real property; the court decided that the wrongdoer was entitled to the computed value of the net income of one half of. the property for her life expectancy.
*569 Two other cases in New York can be distinguished from the Hawkins case in that they deal with murder-suicide situations. In the earlier case (Van Alstyne v Tuffy, 103 Misc 455), the court recognized the rule in Riggs v Palmer (supra), and awarded the entire premises to the heirs at law of a deceased wife murdered by her husband who then took his own life. It is not clear at all in that case whether or not the court would have permitted the suicide to have retained a life estate if he had lived. Similarly, in Matter of Pinnock (83 Misc 2d 233) the court denied the estate of the wrongdoer from succeeding to any rights that the wrongdoer may have had to the real property held by tenants by the entirety with his wife, but specifically noted that during their joint lives each had a right to a life interest in one half of the property. The murder-suicide however made this point moot.
It is interesting historically that at common law in colonial times when sentence was pronounced for a capital offense, the offender by operation of law was placed in a state of attainder thereby forfeiting his property to the king preventing the offender from transmitting his estate to his heirs or their inheriting through him resulting in an extinction of civil rights.
Suffice it to say that today under section 79-b of the Civil Rights Law "A conviction of a person for any crime, does not work a forfeiture of any property, real or personal, or any right or interest therein.”
The previous decision of this court dated May 2, 1979 approved the sale of the real property and directed the proceeds be placed in escrow pending the proper distribution of assets. Now the court determines that in accordance with the views heretofore mentioned, Thomas Busacca is entitled to the computed value of a life estate in one half of the proceeds based on his life expectancy.
The fee of the guardian ad litem Mr. Skelos is fixed in the sum of $100.