In the Matter of the ESTATES of Russell D. JOSEPHSON and Robbyn E. JOSEPHSON, Deceased.

John P. FRIEDT, Petitioner [Respondent Below] and Appellee,

v.

Michael JOSEPHSON, Respondent [Appellant Below] and Appellant,

and

Maxine Josephson, Grace Josephson, Allen Josephson, Patricia Josephson, Elizabeth Josephson, and Donald Josephson, Respondents [Respondents Below].

Civ. No. 9761.

Supreme Court of North Dakota.

Oct. 7, 1980.

David L. Peterson, of Wheeler, Wolf, Wefald & Peterson, Bismarck, for petitioner [respondent below] and appellee.

Benjamin C. Pulkrabek, Mandan, for respondent [appellant below] and appellant.

VANDE WALLE, Justice.

Michael Josephson, a minor, appeals from an order of the Mercer County district court affirming the decree of the Mercer County court of increased jurisdiction declaring intestacy and determining heirs. We affirm.

Russell D. Josephson and Robbyn E. Josephson had four adopted children, one of whom was Michael Josephson. On December 29, 1978, Russell and Robbyn died as a result of gunshot wounds. Subsequent to their deaths John P. Friedt petitioned for adjudication of intestacy and determination of heirs, requesting that he be named as personal representative of the estates of the deceased Josephsons. Friedt was named as personal representative. During the course of proceedings in county court, the personal representative and the guardians ad litem for the other three Josephson children, Maxine, Grace, and Allen, raised the issue of whether or not Michael was entitled to inherit from his parents estates. It was the position of the personal representative of the estates and the guardian ad litem for Grace and Allen that Michael was not entitled to inherit from his parents' estates because he had caused their deaths. Sec. 30.-1-10-03, N.D.C.C. After a trial the Mercer County court of increased jurisdiction determined that Russell and Robbyn had died intestate, that Michael had caused the deaths of his parents by felonious means and was not entitled to inherit from his parents' estates, and that Maxine, Grace, and Allen should share the proceeds of the estates among them.[1] Michael appealed the decision of the county court to the district court in accordance with the provisions of Section 30 26 01, N.D.C.C. The district court heard the appeal on the record[2] and the briefs of the parties and affirmed the county court decree. The district court determined that Michael was precluded from inheriting from the estates of his parents "on the ground that the preponderance of the evidence establishes that he feloniously and intentionally caused their death."

On appeal to this court, as he did in the county and district courts, Michael alleges that a juvenile in North Dakota cannot commit a felonious act.[3] His position is that, notwithstanding the provisions of Section 30.1 10 03(1), N.D.C.C., the provisions

1. Also at issue before the county court was the question of whether or not three children who were living with the Josephsons but who had not yet been legally adopted should share in the estates. The county court determined that the three children who had not been adopted were not legal heirs of the Josephsons. That issue was not appealed to the district court and is not before us on this appeal.

2. Although the notice of appeal contained specifications of error of both fact and law, the notice of appeal also specified that Michael wanted the appeal to be had on the transcript of the hearing before the county court as well as all of the files, papers, and documents included in the county court's record of the matter. A stipulation to that effect was signed by all the parties to the action. Section 30-26-08,

N.D.C.C., requires that for the purpose of taking an appeal from a decree or order of a county court on questions of law alone, the notice must contain a statement to that effect. Section 30 26 23, N.D.C.C., requires that if an appeal from a decree or an order of the county court is taken generally, all the issues must be tried and determined anew in the district court and the court "must hear the allegations and proofs of the parties and determine all questions of law and fact arising thereon ..."

3. Although Michael alleged in county court and in district court that there was insufficient evidence introduced as to his commission of a felonious act, that issue and other issues raised in the appeal to the district court have not been raised in this appeal.

of Chapter 27–20, N.D.C.C., prohibit a conclusion that a minor can commit a felonious act.

Section 30.1–10–03, N.D.C.C., provides, in part:

"1. A surviving spouse, heir, or devisee who feloniously and intentionally kills the decedent is not entitled to any benefits under the will or under chapters 30.-1–04 through 30.1–11, and the estate of the decedent passes as if the killer had predeceased the decedent. . . ."

Section 27–20–02(2), N.D.C.C., defines "delinquent act" as "an act designated a crime under the law, including local ordinances or resolutions of this state, or of another state if the act occurred in that state, or under federal law, and the crime does not fall under subdivision c of subsection 4 and is not a traffic offense as defined in subsection 10."

A person who wrongfully causes the death of another is guilty of a felony. See Chapter 12.1–16, N.D.C.C. Section 27 20 33, N.D.C.C., provides that an order of disposition or other adjudication in a juvenile court proceeding "is not a conviction of crime and does not impose any civil disability ordinarily *resulting from a conviction* . . ." [Emphasis supplied.] That section further provides that the disposition of a child and evidence adduced in a hearing in juvenile court may not be used against him in any proceeding in any court other than a juvenile court. Michael argues that these sections are exclusive and prohibit the operation of Section 30.1–10–03(1) against a minor who, if it were not for his age, would be guilty of a felony, i. e., wrongfully causing the death of another person. We do not agree.

■ Section 27–20–33, N.D.C.C., prohibits the imposition of any civil disability arising from conviction of wrongfully causing the death of another person, but that prohi-

bition is, by the terms of the statute, limited to orders of disposition or other adjudications in a juvenile court proceeding. Although Section 30.1 10-03(1) may be considered the imposition of a civil disability it does not arise from any order or adjudication in a juvenile court proceeding. Rather, it is a civil disability imposed by statute separate and apart from any juvenile court proceedings. This is clearly indicated by subsection 5 of Section 30.1 10-03, which provides:

"5. A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing, the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section." [4]

This section makes it abundantly clear that, although a final judgment of conviction of felonious and intentional killing is conclusive for the purpose of determining whether or not an heir may receive benefits from the estate of the decedent, the final judgment of conviction is not the only basis for implementation of the prohibition. Subsection 5 specifically provides that in the absence of a conviction of felonious and intentional killing, the court may determine by a preponderance of evidence whether the killing was felonious and intentional. Section 30.1 10 03 was enacted as part of the Uniform Probate Code in 1973 [Chapter 257, 1973 N.D.Sess.Laws] with an effective date of July 1, 1975. Prior to the effective date of Section 30.1 10 03, the governing statute was Section 56 04 23, N.D.C.C., which provided:

"No person who has been finally convicted of feloniously causing the death of another shall take or receive any property or benefit by succession, will, or otherwise, directly or indirectly, by reason of the death of such person, but all property

4. There is no allegation in this case that either the county court or the district court relied upon any proceedings in juvenile court adjudicating Michael a delinquent child for having wrongfully caused the death of his parents. Therefore, the question of whether or not a minor adjudicated to be delinquent by the juvenile court for wrongfully causing the death of his parents is considered to have been convicted of a crime under subsections 1 and 5 of Section 30.1 10 03 is not before us.

of the deceased and all rights conditioned upon his death shall vest and be determined the same as if the person convicted were dead when the testator died." ·

A comparison of this provision, which was repealed by Chapter 257 of the 1973 Session Laws of North Dakota effective July 1, 1975, with Section 30.1–10–03(5) seems to indicate that prior to July 1, 1975, a final conviction of feloniously causing the death of the testator was required before the prohibition against inheritance became operative; whereas under the current statute the felonious and intentional killing of the decedent may be proved by a preponderance of the evidence in a civil proceeding in the absence of a final judgment of conviction.[5]

■ Michael's interpretation of the word "felonious," as used in Section 30.1–10–03(1), would require us to construe that term as meaning the intentional doing of an act which constitutes a felony as defined by statute. Such an interpretation would, however, be contrary to the expressed legislative intent in subsection 5 of Section 30.1–10–03 which clearly does not require conviction of a felony before an heir may be barred from receiving benefits from the decedent's estate. Subsection 5 of Section 30.1–10–03 does, in fact, prevent a person acquitted of a felony charge from inheriting if the court finds by a preponderance of the evidence that the killing was felonious and intentional.

■ The district court determined that the word "feloniously," as used in Section 30.1–10–03(1), N.D.C.C., means "without

justification or excuse." An examination of the term "feloniously," defined in *Words and Phrases*, reveals the proliferation of definitions for that term. The manner in which a term is defined in one instance will not necessarily control the definition to be applied in a different situation. *Rosenberger v. Northwestern Mutual Life Ins. Co.*, 176 F.Supp. 379 (D.Kan.1959). Many of the cases we have examined concern the issue of whether or not the killing must be intentional or if negligence, which may also result in conviction of a felony, is sufficient. We have no such problem in this instance because Section 30.1–10–03(1) specifically requires that the killing be intentional as well as felonious. Subsection 5 of Section 30.1–10–03 provides not only that a conviction of a felonious and intentional killing is conclusive for the operation of the statute but that in the absence of a conviction the court may nevertheless determine by a preponderance of the evidence whether or not the killing was felonious and intentional. We agree with the district court that the term "feloniously," as used in Section 30.1–10–03(1), N.D.C.C., refers to a killing that is wrongful, that is without legal excuse or justification. In addition, of course, the statute requires that the killing be intentional. Although a minor adjudicated to be delinquent under the provisions of Chapter 27–20 is not, because of the provisions of Section 27–20–33(1), convicted of a crime, that does not mean the minor has not committed the wrongful act. The definitions of "delinquent act" and "delinquent child" as

---

**5.** The official comments of the National Conference of Commissioners on Uniform State Laws contained with the official text and printed in the North Dakota Century Code amplify this distinction. In pertinent part, they read:

"At first it may appear that the matter dealt with is criminal in nature and not a proper matter for probate courts. However, the concept that a wrongdoer may not profit by his own wrong is a civil concept, and the probate court is the proper forum to determine the effect of killing on succession to property of the decedent. There are numerous situations where the same conduct gives rise to both criminal and civil consequences. A killing may result in criminal prosecution for murder and civil litigation by the mur-

dered person's family under wrongful death statutes. While conviction in the criminal prosecution under this section is treated as conclusive on the matter of succession to the murdered person's property, acquittal does not have the same consequences. This is because different considerations as well as a different burden of proof enter into the finding of guilty in the criminal prosecution. Hence it is possible that the defendant on a murder charge may be found not guilty and acquitted, but if the same person claims as an heir or devisee of the decedent, he may in the probate court be found to have feloniously and intentionally killed the decedent and thus be barred under this section from sharing in the estate ..."

contained in subsections 2 and 3 of Section 27–20–02 clearly require a conclusion that the adjudication of a child as delinquent is based on the performance of an act which was wrongful.

■ Under the Uniform Juvenile Court Act Michael may be insulated from a criminal conviction for the felonious killing of his parents, but the terms of that Act do not require or permit us to extend that protection to a civil proceeding. Subsection 2 of Section 27–20–01 requires us to construe the Act in a manner consistent with the protection of the public interest. We do not deem it in the public interest to permit any person, including a minor, who intentionally and feloniously causes the death of a decedent, to inherit from that decedent. The dangers of a construction that permits a minor who intentionally and feloniously causes the death of his parents to inherit from those parents is obvious. The purpose of the Uniform Juvenile Court Act is to prevent that minor from being treated as a criminal in the hope of rehabilitation of the minor. The Act does not authorize us to relieve the minor from civil disabilities that result not from his adjudication as a delinquent but from the performance of the act itself. The determination by the county and district courts that Michael feloniously and intentionally caused the death of his parents is obviously not a conviction of a felony. It is a determination made in a civil proceeding and a determination which must be supported by only a preponderance of the evidence, not evidence beyond a reasonable doubt as in a criminal prosecution. That determination carries with it none of the consequences which flow from an adjudication of a child as delinquent. The protection afforded in Section 27 20 33(1) from any civil disability ordinarily resulting from a conviction does not protect Michael because the disability in this instance does not result from a criminal conviction but from a separate determination by the county court that Michael had, at age 13, feloniously and intentionally caused the death of his parents.

■ Michael also argues that because he is entitled to receive Federal Social Security benefits he is entitled to receive benefits from his parents' estates. He points out that although Federal regulations do not permit a person who has been finally convicted of the felonious and intentional homicide of a wage earner to receive benefits based on the earnings record of that wage earner, minors can be entitled to benefits if the jurisdiction does not consider homicide by a minor as felonious. Michael is receiving Federal Social Security benefits. Although the fact that Michael is receiving Federal Social Security benefits might be a factor to consider if our statutes on this matter were ambiguous, we cannot conclude there is any ambiguity and therefore the position of the Federal Government with regard to the payment of Federal Social Security benefits is of no significance to the issues before us.

■ The county court and the district court determined by a preponderance of the evidence that Michael had feloniously and intentionally killed his parents. That determination was made from evidence presented to the county court, independent of any proceedings in juvenile court. Therefore, the provisions of the Uniform Juvenile Court Act concerning disabilities arising from an adjudication of Michael as a delinquent child were not violated.

■ Finally, Michael argues that if we conclude he is not entitled to benefits from his parents' estates, the estates are nevertheless required to support him until he reaches eighteen years of age, the age of majority. In support of his position, Michael relies upon Section 14-09-08, N.D. C.C., which requires a parent to support a child, and Section 14 09 12, N.D.C.C., which provides that if a parent required to support a child dies leaving an estate sufficient for the child's support, the county may claim support from the estate. These are general provisions which have no application to the factual situation in this instance. The controlling statute is Section 30.1–10–03(1), N.D.C.C., which provides that an heir who feloniously and intentionally kills the

decedent "is not entitled to any benefits ..." Support payments from the estate, even until the age of majority, would constitute "benefits" from the estate and would be directly contrary to statute.

The order of the district court is affirmed.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.