In the Matter of the ESTATE OF Engolf SNORTLAND, Deceased.

Roger L. SNORTLAND, as personal representative of the Estate of Engolf Snortland, Deceased, Appellant,

v.

Lois MERCER, as Conservator of Robert Snortland and Ramsey National Bank and Trust Co., as Conservator of Robbie Snortland, Appellees.

Civ. No. 9949.

Supreme Court of North Dakota.

Oct. 15, 1981.

Traynor & Rutten, Devils Lake, for appellant Roger Snortland, personal representative of the estate; appearances by John T. Traynor and J. Thomas Traynor, Jr., Devils Lake, argued by John T. Traynor, Devils Lake.

Foughty, Christianson & Thompson, Devils Lake, for Robbie Snortland, and Idean M. Locken, Lakota, for Robert Snortland, appellees; argued by Scott Thompson, Devils Lake.

PAULSON, Justice.

Roger L. Snortland, as personal representative of the Engolf Snortland estate, appeals the decision of the District Court of Nelson County ordering that Robbie Snortland be allowed to share in the estate and that Robert E. Snortland be allowed to retain a one-half undivided interest in certain real property held in joint tenancy with the deceased. We affirm.

The facts in this matter are not in dispute. Engolf Snortland died on October 8, 1976, as the result of gunshot wounds. The evidence indicates that he was intentionally and feloniously killed by his son, Robert E. Snortland. Engolf Snortland was survived by his wife, Martha Mae Snortland; his five children: Lois Mercer, Ethel Lynn, Roger L. Snortland, Marlys Forde (since deceased), and Robert E. Snortland; and a grandson, Robert Lars Snortland ["Robbie"].

Robert E. Snortland has not been seen nor heard from since the killing on October 8, 1976. Robbie Snortland is the son of Robert E. Snortland and Frances Genevieve Longie Fournier. Although Robert and Frances were never married, Robert openly acknowledged that Robbie was his son and the parties to this action do not dispute this fact.

Engolf Snortland died intestate, and at the time of his death he owned certain real property in joint tenancy with Robert E. Snortland. On January 15, 1980, the County Court of Nelson County ordered that Robbie Snortland be allowed to share in the Engolf Snortland estate and that Robert E. Snortland be allowed to retain a one-half undivided share of the joint tenancy property. The District Court of Nelson County affirmed this decision on January 27, 1981.

Two issues are presented on appeal:

1. Does a joint tenant who feloniously kills his cotenant retain any interest in the joint tenancy property?

2. May surviving issue of one who feloniously kills another share in the estate of the deceased?

## I

Courts in other jurisdictions which have been confronted with the problem of the killing of a joint tenant by a cotenant have reached a variety of solutions, but none of the States at that time had adopted the Uniform Probate Code. Some jurisdictions have held that, in the absence of a statute, the killing has no effect upon the wrongdoer's right to the property, and he takes the entire property as survivor. *Smith v. Greenburg*, 121 Colo. 417, 218 P.2d 514 (1950); *State ex rel. Miller v. Sencindiver*, 275 S.E.2d 10 (W.Va.1980). Other courts have held that only legal title to the property passes to the wrongdoer, and equity requires that he hold the deceased's one-half interest in the property as constructive trustee for the heirs of the deceased. *Johansen v. Pelton*, 8 Cal.App.3d 625, 87 Cal. Rptr. 784 (1970); *Pannone v. McLaughlin*, 37 Md.App. 395, 377 A.2d 597 (1977) (tenancy by the entireties). In New York, courts have held that the wrongdoer retains only a life estate in one-half of the jointly held property. *In re Estate of Nicpon*, 102 Misc.2d 619, 424 N.Y.S.2d 100 (Surr.Ct.1980) (tenancy by the entireties); *Estate of Busacca*, 102 Misc.2d 567, 423 N.Y.S.2d 622 (Surr.Ct.1980) (tenancy by the entireties). Finally, some courts have held that the killing severs the joint tenancy and creates a tenancy in common, with the wrongdoer and the deceased's estate receiving equal, undivided shares in the jointly held property. *Kempaner v. Thompson*, 394 So.2d 918 (Ala.1981); *Bradley v. Fox*, 7 Ill.2d 106, 129 N.E.2d 699 (1955); *In Matter of Estate of Coslet*, 39 Ill.App.3d 305, 349 N.E.2d 499 (1976); *Duncan v. Vassaur*, 550 P.2d 929 (Okl.1976).

North Dakota has adopted the Uniform Probate Code and we must interpret it irrespective of the decisions of those States which have not adopted the Uniform Probate Code. Section 30.1–10–03(2) of the North Dakota Century Code provides:

"*30.1–10–03 [2–803 (Uniform Probate Code)]. Effect of homicide on intestate succession, wills, joint assets, life insurance, and beneficiary designations.—*

.    .    .    .    .

"2. Any joint tenant who feloniously and intentionally kills another joint tenant thereby effects a severance of the interest of the decedent so that the share of the decedent passes as his property and the killer has no rights by survivorship. This provision applies to joint tenancies in real and personal property, joint accounts in banks, savings and loan associations, credit unions, and other institutions, and

any other form of co-ownership with survivorship incidents."

This statute clearly provides for the severance of the decedent's interest in the jointly held property, and the decedent's interest passes through his estate.

■ We have previously held that severance of a joint tenancy creates a tenancy in common. In *Renz v. Renz*, 256 N.W.2d 883, 886 (N.D.1977), we held that when the parties severed their joint tenancy relationship they thereby created in themselves a tenancy in common. Similarly, in *Robar v. Ellingson*, 301 N.W.2d 653, 662 (N.D.1981), we noted that a conveyance by one cotenant of her interest in joint tenancy property severed the joint tenancy and created a tenancy in common between her former cotenant and the purchaser of her interest in the property. Although *Renz, supra,* involved severance by a divorce property settlement and *Robar, supra,* involved severance by a conveyance, the same principles are applicable here. We hold that the severance of a joint tenancy by the killing of one joint tenant by a cotenant, as set out in § 30.1–10–03(2), N.D.C.C., creates a tenancy in common, with a one-half undivided interest of the jointly held property passing to the decedent's estate and the other one-half undivided interest retained by the wrongdoer.[1] In the instant case, therefore, one-half of the jointly held property passes to Engolf Snortland's estate and the remaining one-half interest is retained by Robert E. Snortland.[2]

Two points raised in appellant's brief merit discussion. First, appellant contends that retention by Robert of *any* interest in the joint tenancy property gives him "rights by survivorship" in derogation of § 30.1–10–03(2), N.D.C.C. The severance of the joint tenancy, however, has the opposite effect: it *extinguishes* the tenants' rights by survivorship. As we indicated in *Jamestown Terminal Elevator, Inc. v. Knopp*, 246 N.W.2d 612, 613 (N.D.1976), "The right of survivorship is in the whole interest conveyed by the original joint tenancy deed...." Severance of the joint tenancy in this case extinguishes any chance Robert had of acquiring the whole property by survivorship. Thus, the one-half undivided interest he now takes as a tenant in common is *not* acquired by his right of survivorship as a joint tenant, but is merely his share as a tenant in common.

Finally, appellant urges this court to construe subsections 1 and 2 of § 30.1–10–03, N.D.C.C., together, and distribute the joint tenancy property as though Robert had predeceased Engolf. Section 30.1–10–03(1), N.D.C.C., provides:

"*30.1–10–03 [2–803 (Uniform Probate Code)]. Effect of homicide on intestate succession, wills, joint assets, life insurance, and beneficiary designations.—1. A surviving spouse, heir, or devisee who feloniously and intentionally kills the decedent is not entitled to any benefits under the will or under chapters 30.1–04 through 30.1–11, and the estate of decedent passes as if the killer had predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.*"

Courts in other jurisdictions have held that a result which would give all of the joint tenancy property to the decedent's estate would work a forfeiture on the wrongdoer. *See, e. g., Johansen v. Pelton*, 8 Cal.App.3d 625, 87 Cal.Rptr. 784 (1970). *See, also* § 12.1–33–02, N.D.C.C. (person convicted of crime does not suffer civil death, corruption of blood, or forfeiture of estate or property, except as otherwise provided by law).

---

1. A contrary result, awarding all of the joint tenancy property to the decedent's estate, would work a forfeiture on the killer. At early common law, an offender convicted of a capital offense was placed in a state of attainder. Attainder had three principal incidents: forfeiture of property to the king; corruption of blood, which prevented the offender's heirs from inheriting from or through him; and "civil death" (extinction of civil rights). The common law incidents of attainder have generally been abandoned under modern policies of law, and are forbidden by the Constitutions of many States. 21A Am.Jur.2d Criminal Law § 1022.

2. Due to Robert's continued absence, his interest in the property will be held by his conservator.

If appellant's position were adopted and if subsections (1) and (2) of § 30.1–10–03 were read together, Engolf's estate would take the property by Engolf's right of survivorship. This would clearly be a misapplication of the Code, however. The Legislature has enacted a specific provision governing the disposition of joint tenancy property, i.e., § 30.1–10–03(2), N.D.C.C., and the construction urged by appellant would render that provision nugatory. If the Legislature had intended that joint tenancy property be governed by § 30.1–10–03(1), N.D.C.C., it could have expressly provided so; because it has not done so, and as there is an express provision governing joint tenancy property, the court cannot extend the coverage of § 30.1–10–03(1), N.D.C.C., to joint tenancy property.

In light of the foregoing reasoning, we conclude that Engolf's estate and Robert are each entitled to a one-half undivided share of the real property formerly held in joint tenancy.

## II

■ Appellant also contends that the district court erred in allowing Robbie Snortland to share in Engolf Snortland's intestate estate. The district court apportioned the estate as follows: Martha Mae Snortland, as surviving spouse, was entitled to the first $50,000 and one-half of the balance of the estate under § 30.1–04–02, N.D.C.C. The remaining one-half of the balance was to be divided equally among Lois Mercer, Ethel Lynn, Roger Snortland, Marlys Forde (with her share passing to the personal representative of her estate), and Robbie Snortland.

As previously noted, the parties agree that Robbie is Robert Snortland's son. The issue raised on appeal is whether § 30.1–10–03(1), N.D.C.C., which requires that the estate be distributed "as if the killer had predeceased the decedent", precludes Robbie from taking his father's share in Engolf's estate by representation. The effect of § 30.1–10–03(1), N.D.C.C., is clear: although the killer is not entitled to share in his victim's estate, the share he otherwise would have taken passes as though he had predeceased his victim. In this case, if Robert had predeceased Engolf, Robbie would be entitled to Robert's share in Engolf's estate by representation under § 30.1–04–03(1). Because Robert is now treated as if predeceased under § 30.1–10–03(1), N.D. C.C., the result is the same: Robbie is entitled to his father's share in Engolf's estate by representation.

Support is lent to this conclusion by the Editorial Board Comment [3] to § 30.1–10–01, N.D.C.C., governing renunciation. The effect of renunciation by an heir is the same as if the heir had killed the decedent—the share of the person renouncing passes as if he had predeceased the decedent. § 30.1–10–01(3), N.D.C.C. The Editorial Board Comment notes that the effect of this provision is that "the heir who would be next in line in succession would take; often this will be the issue of the renouncing person, taking by representation". § 30.1–10–01, N.D.C.C., Editorial Board Comment. Because § 30.1–10–01(2) and § 30.1–10–03(3), N.D.C.C., both provide that property passes as though some person predeceased the decedent, the Comment lends support to the conclusion that Robbie is not precluded from sharing in his grandfather's estate.

In light of the above reasoning, we conclude that Robbie is entitled to share in the estate of his grandfather.

Affirmed.

ERICKSTAD, C. J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

To the extent that the majority opinion relies upon § 30.1–10–03(2), NDCC, to define benefits to Robert E. Snortland, because it is a "specific provision governing

3. The Editorial Board Comments to Title 30.1, N.D.C.C., are the Official Comments to the Uniform Probate Code prepared by the National Conference of Commissioners on Uniform State Laws.

the disposition of joint tenancy property" (see § 1–02–07, NDCC), it is in error.

Section 30.1–10–03(1), NDCC, is equally specific in prohibiting any killer from receiving "any benefits under the will or under Chapters 30.1–04 through 30.1–11," and in requiring the matter to be handled as if Robert E. Snortland had predeceased Engolf Snortland. See *Matter of Estates of Josephsons*, 297 N.W.2d 444 (N.D.1980). This will avoid the absurd results reached by the trial court and affirmed by the majority.

In any event, the Legislature should give the matter some attention.